UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MIGUEL A. INIGUEZ,                                    Case No. 2:22-cv-00740-HZ

                    Petitioner,                       OPINION AND ORDER

        v.

SUSAN WASHBURN,

                    Respondent.

        Miguel A. Iniguez
        20743668
        Eastern Oregon Correctional Institution
        2500 Westgate
        Pendleton, OR 97801-9699

                Petitioner, *Pro Se*

        Ellen F. Rosenblum, Attorney General
        Samuel A. Kubernick, Assistant Attorney General
        Department of Justice
        1162 Court Street NE
        Salem, Oregon 97301

                Attorneys for Respondent

## INTRODUCTION

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging his conviction for murder. For the reasons that follow, the Amended Petition (ECF No. 6) is denied.

## BACKGROUND

In July of 2014, Petitioner moved from California to Coos Bay, Oregon. Resp't Ex. 109 at 6-7 (ECF No. 16-1). On July 12, 2014, Petitioner and his friend attended a Quinceañera at a local community center. *Id*. at 14; Resp't Ex. 107 at 44. Various altercations occurred outside the community center between guests. *See e.g.* Resp't Ex. 106 at 57-60; Resp't Ex. 107 at 49-50, 109-112, 149-152, 172-73, 178.

At some point after the party ended, Petitioner ran toward an altercation in the parking lot between Luis Mario Castillo Murillo and other guests. Resp't Ex. 106 at 60; Resp't Ex. 107 at 153, 173-74, 186-187. Petitioner put a gun under Murillo's throat and shoved him up against a car. Resp't Ex. 107 at 153-55, 173. He then hit Murillo in the head with the butt of the gun at least three times. Resp't Ex. 106 at 61; Resp't Ex. 107 at 154-55, 175, 180, 188-189; Resp't Ex. 108 at 30. Others attempted to wrestle the gun away from Petitioner. Resp't Ex. 107 at 175, 180. While Murillo was bent over, Petitioner pointed the gun at the back of his head and fatally shot him. Resp't Ex. 107 at 154-56, 175, 180; Resp't Ex. 108 at 37. Petitioner fled the scene and was arrested the following morning outside of a Walmart. Resp't Ex. 106 at 61; Resp't Ex. 107 at 52, 221; Resp't Ex. 108 at 84-86, 89-90.

Petitioner was charged with murder, felon in possession of a firearm and theft in the first degree. Resp't Ex. 102. At trial, the State presented physical evidence and eyewitness testimony from numerous party guests and law enforcement officers. *See* Resp't Ex. 103 at 2-25. Several witnesses testified about Petitioner's distinctive head and neck tattoos. *See* Resp't Ex. 107 at 52-

53, 103, 126, 157, 173, 260; Resp't Ex. 108 at 17, 35. The prosecutor discussed the tattoos in his opening statement, closing argument, and cross-examination of Petitioner. *See* Resp't Ex. 106 at 20-21, 23-25; Resp't Ex. 109 at 40-42, 134-35. Trial counsel did not object to testimony or argument about the tattoos.

Trial counsel moved for a judgment of acquittal on the murder charge, arguing that the evidence was insufficient to prove that Petitioner intentionally caused the death of the victim. Resp't Ex. 108 at 245-46. Petitioner's theory of the case was that he only intended to scare the victim with the gun, and that the gun discharged accidentally during a struggle. Resp't Ex. 106 at 37-38. The trial court denied the motion, pointing to the testimony of several witnesses who described that Petitioner deliberately pointed the gun at the victim's head and shot him at close range. Resp't Ex. 108 at 246-47.

A jury convicted Petitioner of murder and felon in possession of a firearm, and the trial court sentenced him to life imprisonment with a minimum of 25 years of incarceration. *See* Resp't Ex. 101-111. Petitioner filed a direct appeal assigning error to the trial court's denial of his motion for judgment of acquittal on the murder charge. Resp't Ex. 112 at 2, 22-26. The Oregon Court of Appeals affirmed Petitioner's conviction without opinion and the Oregon Supreme Court denied review. Resp't Ex. 115, 116.

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County, and filed an Amended Petition for PCR through appointed counsel. Resp't Ex. 117, 118. Petitioner argued that trial counsel was ineffective for failing to object, request jury instructions, or move for a mistrial based on the prosecutor's use of improper propensity evidence (First Claim). Resp't Ex. 118 at 4-12. Specifically, Petitioner challenged counsel's failure to file a motion *in limine* to preclude the State from explicitly or implicitly suggesting that Petitioner's tattoos were evidence of his

propensity to engage in violent conduct. *Id*. at 7-12. He also argued that trial counsel was ineffective for failing to fully develop his accidental discharge defense theory (Second Claim), and that, when considered cumulatively, trial counsel's performance fell below an objective standard of reasonableness (Third Claim). *Id*. at 12-16. The PCR court held an evidentiary hearing and denied relief. Resp't Ex. 130, 131. Petitioner appealed the PCR court's decision assigning error to the PCR court's denial of his First Claim of ineffective and inadequate assistance of counsel, relating to propensity evidence. Resp't Ex. 132 at 2, 8, 16-28. The Oregon Court of Appeals affirmed the PCR court's decision without an opinion. Resp't Ex. 134. The Oregon Supreme Court denied review. Resp't Ex. 135.

Petitioner now brings this *pro se* 28 U.S.C. § 2254 habeas corpus petition and raises the same three ineffective assistance of counsel claims for relief that he raised in his Amended Petition for PCR. *See* Am. Pet. at 8-20; Resp't Ex. 118 at 4-16. Petitioner's supporting memorandum consists of his Amended Petition for PCR. *Id*. Respondent argues relief should be denied because, 1) Petitioner's Second and Third Claims were not fairly presented for relief in state court and are therefore procedurally defaulted and 2) as to his First Claim, the state court's denial of relief was not objectively unreasonable. Resp. to Pet. at 4-5 (ECF No. 14). Although Petitioner's supporting memorandum was due on January 17, 2023, he has not filed such a brief.

## DISCUSSION

### I.    Motion for Counsel (ECF No. 20)

Petitioner has filed a renewed motion for appointment of counsel (ECF No. 20). The Court previously declined to appoint counsel because the interests of justice did not require it. Order dated Nov. 28, 2022 at 2 (ECF No. 19). The Court reasoned that the legal issues presented in the Amended Petition were not so complex that Petitioner could present them *pro se* and that he had

demonstrated his ability to articulate his grounds for relief. *Id*. The Court adheres to its earlier ruling and therefore denies Petitioner's pending motion for appointment of counsel.

## II.    Exhaustion and Procedural Default

Respondent argues that Petitioner failed to fairly present his Second and Third Claims – one claim that counsel failed to adequately develop evidence about injuries to his arm in support of his accidental discharge defense and one claim of cumulative error – to the Oregon Court of Appeals in his PCR appeal and that they are therefore procedurally defaulted. A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S.

152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In his Second Claim, Petitioner asserts that he suffered an "extensive hematoma" to his right arm caused by "hyperextension of his arm when multiple people jerked on it while struggling over the firearm and which caused him to accidentally discharge it." Am. Pet. at 17. At trial, counsel "conducted a superficial examination" of Petitioner's right arm to show bruising from hyper-extending it backwards during the altercation. *Id*. at 16-17. Petitioner argues competent counsel would have recognized that Petitioner's injury was a "critical component of his accidental discharge defense," and would have elicited through testimony "the exact sequence of events and mechanism of injury" to fully develop the defense during trial. *Id*. at 18. In his Third Claim, Petitioner argues that, when considered cumulatively, counsel's overall performance fell below an objective standard of reasonableness and resulted in Petitioner's convictions and sentences. *Id*. at 20.

Petitioner did not advance either of these claims in his PCR appeal. *See* Resp't Ex. 132. In this regard, he failed to present his Second and Third Claims to Oregon's state courts on PCR appeal. Because the time for doing so passed long ago, these claims are now procedurally defaulted and Petitioner has not attempted to excuse his default.

## III.    The Merits

### A.  Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id*. at 410.

B.  <u>Analysis</u>

In his PCR proceedings, Petitioner argued counsel was ineffective for "failing to object, request jury instructions, or move for a mistrial based on the prosecutor's use of improper propensity evidence." Resp't Ex. 132 at 16. The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686–687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id*. at 689. Second, the petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one which is sufficient to undermine confidence in the sentence petitioner received. *Id*. at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

During PCR, Petitioner argued that counsel was ineffective for failing to object when the prosecutor referred to Petitioner's "unique tattoos" during his opening argument and described them in detail to the jury. Resp't Ex. 132 at 22. While cross-examining Petitioner, the prosecutor elicited testimony without objection about the meaning of the tattoos, including that

> the tattoo on his neck that read "5150" referred to the California penal code for the "criminally insane." The word "Reyes" on the back of his head meant "kings," and "SoCal" on the top of his head meant Southern California. The photos of the tattoos also showed that petitioner had a tombstone with "RIP" across it, a human skull on the back of his neck, and a snake across his right chest.

*Id*. at 23 (citations omitted). In his closing argument, the prosecutor argued without objection that Petitioner's head and neck tattoos suggested he was guilty or indicated that he wanted to project a "persona" of "the new bad guy in town." *Id*. at 23-24. Petitioner asserted counsel should have filed a motion *in limie* to limit the state's use of evidence of Petitioner's tattoos as propensity evidence or moved for a mistrial. *Id*. at 25.

In advance of the PCR hearing, trial counsel submitted an affidavit. Resp't Ex. 128. According to counsel, he did not file a motion *in limine* about Petitioner's tattoos because the motion would have been denied. *Id*. at 1. He stated that, under Oregon law, the State was allowed to offer evidence of tattoos for purposes of identification, and that he was

> unaware of any case law support for petitioner's claim that such a motion would have been able to prevent the state from *implicitly* suggesting that the tattoos were evidence of violent propensity.

*Id*. (emphasis in original). Counsel stated that he did not object to the prosecutor's cross-examination or closing argument because, although the statements went up to the line of permissibility, he believed the prosecutor did not cross it. *Id*. at 1-2. He noted that, with respect to the prosecutor's closing argument, in his experience it was "better to refrain from objecting" because "[a]n objection would have simply drawn the jury's attention to a matter which we preferred not to highlight." *Id*. at 2.

At the PCR hearing, Petitioner testified about his head and neck tattoos, the "exact sequence of events leading up to the shooting," how he sustained an arm injury during the struggle over the gun, and that he did not intentionally shoot and kill the victim. Resp't Ex. 130 at 8-11. The PCR court found trial counsel's testimony credible, and found Petitioner's testimony, "particularly regarding how the victim was shot, to be not credible." Resp't Ex. 131 at 3.

The PCR court addressed Petitioner's ineffective assistance of counsel claim, concluding that counsel's strategic decisions not to file a motion *in limine* or object during the prosecutor's cross-examination and closing argument were reasonable. *Id*. Specifically, the PCR court found that counsel's decision not to file a motion *in limine* was reasonable because "[t]he tattoo evidence was admissible, at a minimum, as evidence to identify Petitioner as the shooter during the altercation," and the motion would have therefore been denied. *Id*. As to the prosecutor's cross-examination of Petitioner, the PCR court found that counsel "reasonably believed that the questions and argument were proper and made a strategic decision to not object" because the elicited testimony was "supportive of the state's theory that the Petitioner was the aggressor in the altercation and that the shooting was not an accident." *Id*. at 4. With respect to the prosecutor's closing argument, the PCR court found that trial counsel reasonably relied on his "considerable experience" because "[s]uch statements do not cross the line that prohibits use of tattoos as

evidence of a propensity for violence, so the statements were not objectionable." *Id*. The PCR court concluded that Petitioner failed to prove prejudice because there was "ample evidence of Petitioner's guilt, including multiple eye-witnesses," the tattoo evidence was admissible and Petitioner failed to prove that there was a tendency that the outcome of the trial could have been different. *Id*.

These were not unreasonable determinations based upon the totality of the record. "[A] petitioner claiming ineffective assistance of counsel for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case." *Styers v. Schriro*, 547 F.3d 1026, 1030 n. 5 (9th Cir. 2008). However, the PCR court's determination that evidence of Petitioner's tattoos was admissible under Oregon law, and a motion *in limine* would therefore not have succeeded, is not subject to review by this court. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Moreover, *Strickland* and its progeny do not require trial counsel to make futile objections. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (finding that a challenge to a futile objection fails both prongs of *Strickland*). "[A]bsent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993), *as amended on denial of reh'g* (Apr. 15, 1993). Thus, trial counsel's decision not to object to the prosecutor's comments to avoid highlighting them, was a reasonable strategic decision. In this respect, counsel's performance did not fall below an objective standard of reasonableness. Additionally, Petitioner has not shown prejudice because he has not established that there is a reasonable probability that

the result of his trial would have been different had counsel actually objected or moved to exclude evidence of his tattoos. For these reasons, the PCR court's decision was neither contrary to nor an unreasonable application of clearly established federal law and Petitioner is not entitled to habeas corpus relief.

## **<u>CONCLUSION</u>**

Petitioner's second motion for appointment of counsel (ECF No. 20) is denied. For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (ECF No. 6) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.


March 7, 2023
DATE

Marco A. Hernandez
United States District Judge